IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REYNA ANGELINA ORTIZ (legal name RAYMOND ORTIZ), *et al.* | |
| Plaintiffs, | No. 19-cv-02923 |
| v. | Judge John F. Kness |
| KIMBERLY M. FOXX, in her official capacity as Cook County State's Attorney; TIMOTHY C. EVANS, in his official capacity as the Chief Judge of the Circuit Court of Cook County; and SHARON M. SULLIVAN, in her official capacity as the Presiding Judge of the County Division of the Circuit Court of Cook County, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

This case concerns a challenge to the Illinois statute that governs whether and how people can change their legal names. Plaintiffs are a group of transgender persons who intend to change their names under the Illinois Change of Name statute. But Plaintiffs face an impediment: because each Plaintiff has been convicted either of a felony, certain sex crimes, or an identity-theft offense, Plaintiffs' ability to proceed with their name change petitions in the Illinois courts is precluded by the terms of the Change of Name statute. According to Plaintiffs, these elements of the statute violate Plaintiffs' rights under the United States Constitution.

In an effort to air their constitutional claims, Plaintiffs have sued Kimberly M. Foxx, the Cook County State's Attorney; and the Circuit Court of Cook County's Chief

Judge Timothy C. Evans and Presiding Judge Sharon M. Sullivan (the "State Judges"). Plaintiffs seek a declaration that the Change of Name statute is unconstitutional, and they also seek a federal injunction commanding the State's Attorney and the State Judges either not to oppose or to fail to grant Plaintiffs' anticipated name-change petitions.

This Court, however, cannot reach the merits of Plaintiffs' suit, because the Court lacks jurisdiction over this case. As explained below, Plaintiffs lack standing to proceed against the State's Attorney in federal court, and well-established doctrines—including the need to respect the value of comity between coordinate judicial systems—preclude the Court from commanding the State Judges not to apply the Change of Name statute.

It may be true, as Thoreau wrote, that a "name pronounced is the recognition of the individual to whom it belongs." Henry David Thoreau, A Week on the Concord and Merrimack Rivers 170 (2010). It is certainly true that Plaintiffs, who seek to secure the right to have pronounced their chosen names, have presented weighty arguments against the Illinois Change of Name statute. But because Plaintiffs have failed to demonstrate that federal jurisdiction exists over this action, those substantive arguments will need to be presented to another forum. For the reasons that follow, Defendants' motions to dismiss are granted.

I. BACKGROUND

In Illinois, whether and how a person can change their legal name is governed by statute. *See* 735 ILCS 5/21-101 *et seq.* ("Article XXI. Change of Name"). Of relevance to this case, the statute prevents two categories of convicted persons from

2

changing their names. First, a person cannot change their name for ten years if the person has been convicted of any felony. Second, a person is permanently prohibited from changing their name if the person has been convicted of identity theft, aggravated identity theft, or certain sexual offenses. 735 ILCS 5/21-101(b). Those restrictions maintain public safety by preventing felons, and particularly convicted fraudsters and sex offenders, from circumventing post-conviction registration requirements by changing their names. *See* H.R. Transcription Deb., 89th Gen. Assem., 108th Legis. Day, at 107 (Ill. 1996) ("Police agencies track convicted felons by name and date of birth. If a convicted felon changes his or her name, police agencies would not be able to determine his or her criminal record.") (statement of Rep. Pedersen).

Under the Change of Name statutory scheme, the process of changing a name is straightforward and starts with the filing of a petition in the circuit court for the petitioner's home county. 735 ILCS 5/21-101(a). Upon the filing of a petition, the circuit court clerk must serve copies of the petition on the State's Attorney and the Department of State Police. 735 ILCS 5/21-102.5(a).[1] If the name-change petition reflects that the petitioner "has been adjudicated or convicted of a felony or misdemeanor," or has an arrest for a felony or misdemeanor for which a charge is pending or filed, the State's Attorney may require the petitioner to update his criminal history transcript. 735 ILCS 5/21-102(b). The State's Attorney may then

---

[1] The statute was amended in 2021 such that "Department of" was replaced by "Illinois" preceding "State Police". See IL LEGIS 102-538 (2021), 2021 Ill. Legis. Serv. P.A. 102-538 (S.B. 2037). Neither party argues that change affects the substance of the statute or the merits of this suit.

3

choose to file an objection to a petition, *id.*, but nothing in the Change of Name statute makes the filing of an objection conclusive as to the validity of the petition.

Plaintiffs are a group of transgender persons with previous criminal convictions that disqualify them under the Change of Name statute from receiving name changes. (Dkt. 1 ¶ 3.) Plaintiffs have not yet attempted to change their names— but Plaintiffs allege that they have not done so because, in their view, the statute disqualifies them from receiving name changes. (*Id.*) This disability, Plaintiffs contend, violates their First and Fourteenth Amendment rights. (*Id.*) In support of these claims, Plaintiffs set forth in the complaint various experiences that demonstrate how the use of their legal names requires them to engage in compelled speech and subjects them to discrimination. (*Id.* ¶¶ 20–103.) Plaintiffs ask this Court to declare the statute as applied to them to be unconstitutional and to enjoin both the State's Attorney and the State Judges from applying the statute as enacted. (*Id.* at 24.)

Plaintiffs advance several theories in support of their claims for relief against Defendants. (*See generally id.*) Plaintiffs contend that the responsibilities of the State's Attorney under the Change of Name statute to request updates to criminal history transcripts, receive service of petitions, and file objections to petitions make her the proper state official defendant under *Ex parte Young*. (*Id.* ¶ 13); *see Ex parte Young*, 209 U.S. 123 (1908). As for the State Judges, Plaintiffs contend that they are proper defendants to this suit because the State Judges act as administrators when "promulgating the rules, regulations, and policies" of the circuit courts that enforce the Change of Name statute's restrictions. (Dkt. 1 ¶ 14.)

4

Now before the Court are two separate motions to dismiss brought by the State's Attorney and the State Judges. (Dkt. 22; Dkt. 25.) In her motion, the State's Attorney contends that Plaintiffs lack constitutional standing and that, even if standing were not a barrier, Plaintiffs' claims should be dismissed because they are barred by the Eleventh Amendment. (Dkt. 23 at 3.) In addition, the State's Attorney argues that, because some Plaintiffs began using their chosen names before a relevant statutory amendment in 2010, those Plaintiffs fail to allege an injury in fact and fail to state a claim upon which relief can be granted. (*Id.* at 2.)

For their part, the State Judges contend that, because there is no adverse legal interest between the State Judges and Plaintiffs, there is no case or controversy. (Dkt. 26 at 3.) The State Judges also argue that Plaintiffs' claim should be dismissed under the Eleventh Amendment because the State Judges lack a sufficiently close connection with the statute's enforcement. (*Id.* at 6–7.) Finally, the State Judges argue that the text of the civil rights statute, 42 U.S.C. § 1983, bars injunctive relief against judicial officers. (*Id.* at 7–8.)

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief can be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Those allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although

5

legal conclusions are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 679, the Court, in evaluating a motion to dismiss, must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiffs' favor. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up).

Article III of the Constitution requires an actual case or controversy between the parties. *Deveraux v. City of Chicago*, 14 F.3d 328, 331 (7th Cir. 1994). Plaintiffs seeking to demonstrate that they have standing to sue must show (1) that they suffered a concrete and particularized injury in fact; (2) a causal connection between the injury and the challenged conduct of the defendant; and (3) that the injury will be likely redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Because "[s]tanding is an essential component of Article III's case-or-controversy requirement," defendants may seek the dismissal of nonjusticiable claims through a Rule 12(b)(1) motion for lack of subject matter jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (quoting *Lujan*, 504 U.S. at 561).

Under the Eleventh Amendment of the United States Constitution, states (and their officers) are generally protected from suit. As a "general rule," private individuals "are unable to sue a state in federal court absent the state's consent."

6

*McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1049 (7th Cir. 2013). That protection extends to state agencies and state officials acting in their official capacities. *Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010).

Despite that general rule, the doctrine announced by *Ex parte Young*, 209 U.S. 123 (1908), provides an end-run around the general barrier to suit presented by the Eleventh Amendment. *Indiana Prot. & Advocacy Servs.*, 603 F.3d at 371. Specifically, a plaintiff can use the *Ex Parte Young* doctrine "by naming a state official who has 'some connection with the enforcement' of an allegedly unconstitutional state statute for the purpose of enjoining that enforcement." *Doe v. Holcomb*, 883 F.3d 971, 975 (7th Cir. 2018) (quoting *Ex parte Young*, 209 U.S. at 157). In applying *Ex parte Young*, a court needs to conduct a "straightforward inquiry" to determine if the complaint alleges an ongoing violation of federal law and whether the relief sought can be properly characterized as prospective. *McDonough Assocs.*, 722 F.3d at 1051.

## III. DISCUSSION

### A. The State's Attorney's Motion to Dismiss

Plaintiffs seek relief from the State's Attorney's "causal[] connect[ion] with the enforcement of the Illinois Name Change Statute." (Dkt. 1 ¶ 13.) They contend that some form of declarative[2] or injunctive relief against the State's Attorney could

---

[2] Plaintiffs assert that they seek declaratory relief in their complaint, but it is unclear whether they purport to proceed under the Declaratory Judgment Act, 28 U.S.C. § 2201. (Dkt. 1 ¶¶ 4, 13 (against State's Attorney), 14 (against State Judges)). It is true, of course, that a well-pleaded complaint need not plead legal theories. *Smith v. Med. Benefit Administrators Grp., Inc.*, 639 F.3d 277, 284 n.2 (7th Cir. 2011). But a district court "ought not grant declaratory relief unless there is an actual, 'substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

7

redress their injuries. (*Id.*) Conversely, the State's Attorney argues that the connection between her office and that statute's enforcement is too tenuous to support the requested relief. (Dkt. 23 at 8 (citing *Holcomb*, 883 F.3d at 975).)

To survive dismissal, Plaintiffs must show an injury in fact, sufficient causal connection between the State's Attorney and her ability to enforce the statute, and that an injunction will address the harm. Any professed the injury must be traceable to the defendant's challenged conduct to support the finding of a causal connection. *Lujan*, 504 U.S. at 560. In the State's Attorney's view, because Plaintiffs fail to establish a sufficient connection between the State's Attorney's office and enforcement of the name-change statute, Plaintiffs cannot meet any of the three threshold issues necessary to find standing.

Central to the Court's resolution of this debate is *Doe v. Holcomb*, in which the district court dismissed a challenge to an Indiana name-change statute that required persons who sought a change of name to provide proof of United States citizenship. 883 F.3d at 75. In that case, the plaintiff, who sought a name change so that the plaintiff's name would "conform[]" to plaintiff's gender identity, sued various state officials, including the Indiana Attorney General, Marion County Clerk of Court, and Executive Director of the Indiana Supreme Court Division of State Court

---

declaratory judgment.' " *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 578 (7th Cir. 1994) (quoting *Maryland Cas. Co. v. Pac. Coal Oil Co.*, 312 U.S. 270 (1941)); *see Shipley v. Chi. Bd. of Election Comm'rs,* 947 F.3d 1056, 1064 (7th Cir. 2020) ("The Declaratory Judgment Act permits a federal court to award a declaratory judgment only in 'a case of actual controversy.' "). For the reasons set forth in this Opinion, even if Plaintiffs' case could fairly be viewed as seeking a declaratory judgment, Plaintiffs have failed to show the existence of a justiciable controversy that would warrant a declaratory judgment.

8

Administration. *Id.* at 974–75. Among other things, the district court held that the plaintiff lacked standing to proceed against the state Attorney General. *Id.* at 977.

On appeal, the Seventh Circuit, over the thoughtful dissent of Judge Wood, concluded that, because the "Attorney General has not threatened to do anything, and cannot do anything" adverse to the plaintiff under the name-change statute, permitting the plaintiff's complaint to go forward would "extend *Ex Parte Young* past its limits." *Id.* at 977. As the court explained, the Attorney General's "connection to the enforcement of the name-change statute" was not sufficiently "intimate" to allow the case to continue. *Id.* In addition, the majority dismissed the claims against all of the other defendants in *Holcomb* for lack of standing—either lack of injury or lack of causation and redressability. 883 F.3d at 976–79.

*Holcomb* establishes that Plaintiffs' case against the State's Attorney cannot go forward. Under the Change of Name statute, the State's Attorney has a limited set of responsibilities: she may request an update to a petitioner's criminal history transcript, receive a copy of the petition, and file a written objection to a petition. 735 ILCS 5/21-102.5. Not included in those duties, however, is the authority to grant or deny a name change—at most, the State's Attorney can *ask* that the petition be denied. But the final decision whether to grant or deny the petition rests with the adjudicative body: the circuit court.

Stated differently, the State's Attorney does not enforce the Change of Name statute. *See Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 534 (2021) (noting the pitfalls of seeking an injunction against a state official who lacks "any enforcement authority . . . that a federal court might enjoin him from exercising."); (citing *Mendez*

9

*v. Heller*, 530 F.2d 457, 460 (2d Cir. 1976)); *Holcomb*, 883 F.3d at 977–78; *cf.* Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 938 (2018) ("All [an] injunction does is prevent the named defendant[] from *enforcing* that law while the court's injunction remains in place."). As a practical matter, the State's Attorney's objection would not be the cause of any injury to Plaintiffs; they cannot show, therefore, that an injunction against the State's Attorney would redress their injuries. *See Holcomb*, 883 F.3d at 979 (finding that the plaintiff did not have standing to sue the county clerk who had no authority to grant or deny name changes).

Plaintiffs have failed to show that the State's Attorney is either the cause of, or the solution to, their objections to the Change of Name statute.[3] Put more precisely, Plaintiffs cannot show that they possess standing to proceed against the State's Attorney. Because standing is an essential component of subject matter jurisdiction, the State's Attorney's motion to dismiss is well-founded, and the claims against the State's Attorney must be dismissed for lack of jurisdiction.[4]

---

[3] The State's Attorney also separately seeks to dismiss the subset of Plaintiffs who chose their names before July 1, 2010, arguing that, because the statute invalidated only common law name changes adopted after July 1, 2010, those Plaintiffs fail to allege a cognizable injury. *See* 735 ILCS 5/21-105. Because the Court finds that all of Plaintiffs' claims against the State's Attorney should be dismissed, that issue is moot.

[4] Moreover, to fit within the *Ex parte Young* exception, an injunction prohibiting an official's conduct must be able to provide prospective relief. But for the same reason that the State's Attorney has only an advisory role, an injunction against her would fail to provide meaningful prospective relief. S*ee id*. at 975 ("[W]here a plaintiff sues a state official to enjoin the enforcement of a state statute, the requirements of *Ex parte Young* overlap significantly with the last two standing requirements—causation and redressability").

10

### B. The State Judges' Motion to Dismiss

Plaintiffs also contend that the State Judges, in their official administrative capacities, are causally connected with enforcing the Illinois Change of Name statute such that declaratory and injunctive relief would redress Plaintiffs' injuries. (Dkt. 1 ¶ 14.) Plaintiffs assert that the State Judges act as administrators by "promulgating the rules, regulations, and policies" that enforce the Change of Name statute. (*Id.*) Whether the State Judges act as administrators of the Change of Name statute or, instead, as more traditional adjudicators of legal claims matters to this dispute, Plaintiffs explain, because conventional limitations on suing judges do not apply where judges act as "administrators." *Coleman v. Dunlap*, 695 F.3d 650, 653 (7th Cir. 2012) ("[J]udges have immunity only for the decisions they make as adjudicators, not the decisions they make as administrators[.]"

In contrast, the State Judges argue that, because judges who adjudicate petitions under the Change of Name statute do so in their judicial capacity, there is no live case or controversy between them and Plaintiffs. (Dkt. 26 at 3–5.) The State Judges also argue that they are not proper defendants to this challenge to the constitutionality of a state statute. (*Id.* at 6–7.)

As a general rule, "[j]udicial immunity extends to acts performed by the judge 'in the judge's *judicial capacity*.'" *Dawson v. Newman*, 419 F.3d 656, 661 (7th Cir. 2005) (quoting *Dellenbach v. Letsinger*, 889 F.2d 755, 758 (7th Cir. 1989)). That means "judicial acts," but not "ministerial or administrative acts." *Id.* (quoting *Lowe v. Letsinger*, 772 F.2d 308, 311 (7th Cir. 1985)). To be sure, there is "imprecision inherent in 'attempting to draw the line between truly judicial acts, for which

11

immunity is appropriate, and acts that simply happen to have been done by judges.' " *Id.* (quoting *Forester v. White*, 484 U.S. 219 (1988)); *see id.* at 660–61 ("The doctrine of judicial immunity has been embraced for centuries [and] confers complete immunity from suit, not just a mere defense to liability") (cleaned up).

Beyond judicial immunity, the justiciability of Plaintiffs' complaint against the State Judges depends on whether 42 U.S.C. § 1983 allows suit against the judges in their official capacity under *Ex parte Young*. But Plaintiffs start from a difficult position because section 1983 specifically bars injunctive relief against a judicial officer. *Smith v. City of Hammond, Indiana*, 388 F.3d 304, 307 (7th Cir. 2004). And the Seventh Circuit has explained that a state judge performing the judicial function cannot create a justiciable case or controversy. *Dawson*, 419 F.3d at 660–61. Ultimately, if a party is upset with the result of a judicial act—if a judge "errs 'through inadvertence or otherwise' " that party's " 'remedy is through the appellate process.' " *Id.* (quoting *Lowe*, 772 F.2d at 311).

As with the case against the State's Attorney, absent a showing of an adverse interest sufficient to create a live case or controversy, there cannot be federal jurisdiction to hear a case against the State Judges. *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 999 (7th Cir. 2011). Determining whether an adverse interest exists, however, requires understanding the State Judges' role in granting a petition under the Change of Name statute.

To grant a name-change petition, the court must determine whether the statutory requirements for granting the petition are met. 735 ILCS 5/21-101. But the broad statutory language of the Change of Name statute does not mean the judge

12

who hears a name-change petition acts acting outside of an adjudicative capacity. Quite the opposite: judges can act with broad discretion without either imperiling their neutrality or negating a finding that they are performing a judicial function. *See, e.g., Nollet v. Justices of Trial Court of Com. Of Mass.*, 83 F. Supp. 2d 204, 211 (D. Mass. 2000) (judges acted in an adjudicatory capacity despite "wide latitude in fashioning the conditions" of restraining orders). Applying statutes on the path to reaching a legal holding is at the core of the judicial function, and that is just what judges do when ruling on a name-change petition: they apply controlling law to a set of facts.

Nor does the fact that a judge denies a name-change petition by applying the language of the Change of Name statute mean that the judge is legally "adverse" to the petitioner. Were that so, then every decision of a judge to apply a statute in ruling against a party could potentially give rise to a case or controversy between the judge and the party. That point was made by the First Circuit in *In re Justices of Supreme Court of Puerto Rico*, where the court held that plaintiffs seeking to challenge a statute did not have an "adverse legal interest" with the Justices of the Supreme Court of Puerto Rico. 695 F.2d 17, 21 (1st Cir. 1982) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–241 (1937)). In that case, the First Circuit concluded that no case or controversy existed because the "Justices' only function concerning the statutes being challenged is to act as neutral adjudicators rather than as administrators, enforcers, or advocates." *Id.* As that Court explained, the lack of role for the Justices to play in a statute's passage and their subsequent lack of role in enforcement undermine the alleged adversity in "the court or judges who are

13

supposed to adjudicate the merits of the suit that the enforcement official may bring." *Id.* at 22.

As in *In re Justices*, so too here. The State Judges have no legal interests adverse to name-change petitioners. The State Judges played no role in the statute's enactment, they do not initiate any actions or independent enforcement activity based on the Change of Name statute, and they possess no particularized interest in whether a given petitioner receives a name change. *See id.* at 21. Rather, the State Judges' role is purely adjudicative.

Plaintiffs' attempts to characterize the State Judges' acts as nonjudicial in character are unavailing. When determining whether an act is judicial, a court considers " 'whether it is a function normally performed by a judge,' and the 'expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.' " *Kowalski*, 893 F.3d at 998 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). After all, processing a name-change petition requires discretion and judgment—factors that weigh in favor of considering an act to be judicial in nature. *See id.* Because name changes in Illinois are ordinarily handled by the courts and require the use of discretion, they are judicial acts.

Plaintiffs counter that suit is proper against the State Judges because they are acting in an administrative, rather than judicial, capacity by "promulgating the rules, regulations, and policies" that may lead to denial of their petitions. (Dkt. 1 ¶ 14.) Even assuming that Plaintiffs' claims do not suffer from a lack of ripeness, Plaintiffs cannot point to any specific rules, regulations, or policies, promulgated by the State Judges—only to the statute's text. But that text does not support Plaintiffs' claims.

14

On the contrary, the Change of Name statute explains that "[i]f it appears to the court that the conditions and requirements under this Article have been complied with and that there is no reason why the prayer should not be granted, the court, by an order to be entered of record, may direct and provide that the name of that person be changed in accordance with the prayer in the petition." 735 ILCS 5/21-101(d).

A recent decision of the Supreme Court further highlights the infirmity of Plaintiffs' effort to sue the State Judges. In *Whole Women's Health*, the Supreme Court declined to allow plaintiffs to continue their suit seeking injunctive relief against what would have eventually included "certification of a class including all Texas state-court judges and clerks and defendants." 142 S. Ct. at 531–32. The Court clarified that the *Ex parte Young* exception "does not normally permit federal courts to issue injunctions against state-court judges or clerks." *Id.* at 532. That is because "those individuals do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties. If a state court errs in its rulings, too, the traditional remedy has been some form of appeal, including to this [Supreme] Court, not the entry of an *ex ante* injunction preventing the state court from hearing cases." *Id.* Indeed, as the Court explained, "the state-court judges who decide [disputes] generally are not" sufficiently adverse to the party who brought the case such as to create an actual controversy. *Id.* Put another way, no " 'case or controversy' exists 'between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute.' " *Id.* (quoting *Pulliam v. Allen*, 466 U. S. 522, 538, n.18 (1984)).

15

More broadly, the principle of comity between distinct state and federal judicial branches suggests that a federal court should not lightly require a state judge to stand as a defendant to a federal suit challenging a state law the judge is bound to apply—let alone to compel that judge, through an injunction, not to apply the law as enacted. *See, e.g., Younger v. Harris*, 401 U.S. 37, 44 (1971) (The concept of "Our Federalism" represents "a system in which . . . the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States."); *see also Ex parte Young*, 209 U.S. at 180 ("[A]n injunction against a state court would be a violation *of the whole scheme of our government.*"). That is especially so when Plaintiffs have made no showing that the courts of Illinois, if presented with the same substantive constitutional arguments Plaintiffs seek to advance here, would not pay diligent and careful heed to those arguments. *See, e.g., Zurich Am. Ins. Co. v. Superior Ct. for State of Cal.*, 326 F.3d 816, 827–28 (7th Cir. 2003) ("[G]iven principles of comity, we cannot lightly assume that a state court would disregard federal law."). And although parties are free to choose a federal forum over a state one for wholly subjective reasons, that choice can be effective only when the plaintiff can establish that the federal forum has jurisdiction over the controversy. In this case, Plaintiffs have sought relief against the State Judges that this Court is not empowered to provide. Accordingly, the State Judges' motion to dismiss is granted.

\*          \*          \*

In the end, this case presents important substantive questions, but they are questions this Court cannot lawfully adjudicate. Relying on Judge Wood's dissent in

*Holcomb*, Plaintiffs argue that it would be "unpalatable" for "alleged constitutional violations [to] escape all judicial review." *Holcomb*, 883 F.3d at 981−82 (Wood, J., dissenting). But "[e]very legal right . . . does not necessarily have a legal remedy," *Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997), and the serious justiciability concerns present in this case outweigh Plaintiffs' appeal to ensuring the availability in every case of a remedy in federal court. Because Plaintiffs cannot show that this Court has been presented with a justiciable case or controversy, the motions to dismiss must be granted.

### IV. CONCLUSION

Defendants' motions to dismiss (Dkt. 22, 25) are granted, and the complaint is dismissed without prejudice for lack of jurisdiction.

SO ORDERED in No. 19-cv-02923.

Date: March 31, 2021

JOHN F. KNESS
United States District Judge